UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Julie M. Dunnigan,

    Plaintiff,

v.                          Case No.:  15-CV-2626 (SRN/JSM)

Federal Home Loan Mortgage Corporation
d/b/a Freddie Mac,

    Defendant.

**AMENDED COMPLAINT WITH JURY TRIAL DEMAND**

**PRELIMINARY STATEMENT**

1. This action for damages is based on Defendant's false and misleading reporting in consumer reports on Plaintiff, failures to follow reasonable procedures, failures to conduct reasonable investigations with respect to such information, and misrepresentations concerning the source of information.

**PARTIES**

2. Plaintiff Julie M. Dunnigan is a natural person who resides in the city of Champlin, County of Hennepin, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

3. Defendant Federal Home Loan Mortgage Corporation d/b/a Freddie Mac ("Freddie Mac") is a corporation doing business in Minnesota and is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

## JURISDICTION AND VENUE

4. Because this case arises under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, jurisdiction of this Court arises under 28 U.S.C. § 1331, and supplemental jurisdiction for state law claims arises under 28 U.S.C. § 1367.

5. Venue is proper in this Court because a substantial part of the claim arose in Minnesota, and Defendant "resides" in Minnesota, as that term is used in 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

6. Freddie Mac is a Government Sponsored Enterprise ("GSE") that has an affirmative duty to facilitate the financing of affordable housing for low- and moderate-income families in a manner consistent with its overall public purposes. 12 U.S.C. § 4501.

7. Plaintiff is part of a low or moderate-income family.

8. Freddie Mac buys mortgages from loan originators on the secondary market, pools them, and sells them as mortgage-backed securities to investors.

9. When deciding whether to extend a particular mortgage loan to a particular consumer, a loan originator will often want to know if Freddie Mac will be willing to buy that mortgage.

10. For many types of loans, loan originators will be unwilling to extend a mortgage loan unless the lender is confident that Freddie Mac is going to subsequently buy it.

11. Freddie Mac provides an automated mortgage underwriting service to loan originators through a Freddie Mac system called Loan Prospector.

12. Through Loan Prospector, Freddie Mac regularly assembles credit information and other information on consumers.

13. Through Loan Prospector, Freddie Mac regularly evaluates consumer credit information and other information on consumers.

14. Loan Prospector is a proprietary Freddie Mac system and is not subject to the control of loan originators.

15. Using data that is input into Loan Prospector, Freddie Mac, through Loan Prospector, generates "Risk Class" evaluations for loan applications.

16. As part of the process of generating "Risk Class" evaluations, Freddie Mac assembles information from multiple sources, including information from credit repositories such as Equifax, Experian, and Trans Union, and information and data that was input by the loan originator.

17. Loan Prospector Risk Classes include "Accept" and "Caution."

18. Freddie Mac, through Loan Prospector, generates "Feedback Certificates."

19. Feedback Certificates are written communications.

20. Freddie Mac communicates Feedback Certificates to loan originators.

21. Feedback Certificates regularly include an indication of Risk Class, a statement whether a potential loan is eligible to be purchased by Freddie Mac, "Credit Report Information," "Credit Risk Comments," and "Loan Processing Information."

22. Freddie Mac uses means of interstate commerce, including the internet, to prepare and furnish Feedback Certificates.

23. As the term itself indicates, a "Risk Class" communicates not just whether Freddie Mac will take the loan, but also something about the risk that the consumer will default.

24. A risk class of Accept in Freddie Mac's Feedback Certificate means that Freddie Mac has made a determination that both the credit and the capacity of the borrower are sufficient.

25. On the other hand, when Freddie Mac says, "CAUTION risk class," it is – in Freddie Mac's own words – "a strong indication of excessive layering of risk." (Ex. A – Excerpts from Aug. 9, 2013 Feedback Certificate, at "Page 4 of 38".)

26. Once Freddie Mac returns a caution as a risk class, Freddie Mac requires the loan originator to manually underwrite the loan.

27. It is more difficult for a lender when there is a Caution risk class.

28. Freddie Mac prepares and furnishes Feedback Certificates with the expectation that loan originators will use Feedback Certificates as a factor in establishing a consumer's eligibility for a particular mortgage loan.

29. Loan originators do use Feedback Certificates and Loan Prospector as a factor in establishing consumers' eligibility for particular mortgage loans.

30. Freddie Mac charges loan originators monetary fees for the use of Freddie Mac's automated underwriting system and the output of the system, including the Feedback Certificates.

31. Plaintiff had a home mortgage loan from M & T Bank ("M & T").

32. Plaintiff was never delinquent with her mortgage payments.

33. In 2008, Plaintiff discharged her M & T debt in a Chapter 7 bankruptcy.

34. Before, during, and after the bankruptcy, Plaintiff continued to make on-time payments on the mortgage, and remained in her home.

35. In early 2013, M & T reported to Equifax that Plaintiff had discharged the debt in bankruptcy.

36. Although M & T made the report about the bankruptcy in 2013, M & T did not report that *the date of the bankruptcy* was 2013.

37. In July 2013, Plaintiff made an application for a new, refinance mortgage loan, through the Home Affordable Refinance Program ("HARP").

38. HARP is a Federal Government assistance program to help underwater and near-underwater homeowners refinance their mortgages.

39. Freddie Mac has a duty to design programs and products that facilitate the use of assistance provided by the Federal Government.  12 U.S.C. § 4565(b)(1).

40. In connection with Plaintiff's July 2013 mortgage application, Freddie Mac, through its Loan Prospector system, evaluated information on Plaintiff, including information from Equifax.

41. Equifax accurately indicated to Freddie Mac that M & T had reported, in early 2013, that the account had been included in bankruptcy.

42. Equifax also accurately indicated to Freddie Mac that the bankruptcy had been in 2008.

43. Neither Equifax nor M &T reported that the bankruptcy had been in 2013.

44. In July 2013, Freddie Mac's Loan Prospector system placed Plaintiff's M & T mortgage account in a "Days Delinquent" category of "90" or more "in Past 12 Months."

45. Freddie Mac's indication that Plaintiff had been 90 days late on a mortgage in the past 12 months was false.

46. Plaintiff had never been 90 days late on her mortgage.

47. Freddie Mac equated the bankruptcy with a 90-day delinquency.

48. Freddie Mac's treatment of the bankruptcy as a 90-day delinquency was false and misleading.

49. Freddie Mac's false and misleading treatment of the bankruptcy as a 90-day delinquency was by intentional design.

50. Moreover, the event that Freddie Mac equated with a 90-day delinquency, i.e., the bankruptcy, had not occurred in the past 12 months.

51. Rather, the bankruptcy had occurred 5 years prior.

52. Freddie Mac deemed the event to have occurred in the past 12 months based on the date that M & T made the report of the bankruptcy, not on the date of the bankruptcy.

53. Plaintiff had no control over when M & T made the report of the bankruptcy.

54. Freddie Mac's use of the date of M & T's report, rather than the date of the bankruptcy, inaccurately reflected on Plaintiff's creditworthiness.

55. Freddie Mac's use of the date of M & T's report, rather than the date of the bankruptcy, was by intentional design.

56. Freddie Mac, based on its placement of the M & T account in the category for 90-day mortgage delinquencies in the past 12 months, issued a "Caution" for the Risk Class in Freddie Mac's Feedback Certificate for Plaintiff's July 2013 loan application. (Ex. B – Excerpts from July 17, 2013 Feedback Certificate.)

57. If Freddie Mac had used the actual date of the bankruptcy, the Risk Class would not have been "Caution."

58. Freddie Mac communicated the July 2013 Feedback Certificate containing "Caution" to the loan originator to whom Plaintiff had applied.

59. The Feedback Certificate included Freddie Mac's statement, "CAUTION risk class is a strong indication of excessive layering of risk." (*Id.*)

60. Freddie Mac's July 2013 Feedback Certificate also included a section of "Credit Information" and a subsection of "Credit Risk Comments." (*Id.*)

61. Among the "Credit Risk Comments" was "Crdt rpt w/recent mtg delinq or review mtg credit history." (*Id.*)

62. Because Freddie Mac issued a "Caution," Plaintiff's July 2013 loan application was denied.

63. When Plaintiff learned that her loan would not be approved because of Freddie Mac's "Caution," Plaintiff contacted Freddie Mac regarding the reason for the "Caution."

64. On or about July 26, 2013, Freddie Mac, through its telephone representative Martha Parra-Olaya, stated to Plaintiff that Equifax was reporting delinquencies on the M & T account.

65. Equifax was not reporting delinquencies on the M & T account.

66. On or about July 26, 2013, Plaintiff disputed to Freddie Mac any indication that she had been delinquent on her M & T account.

67. Freddie Mac failed to determine that the indication of delinquencies was a result of the actions of Freddie Mac.

68. Freddie Mac told Plaintiff to contact M & T Bank.

69. Plaintiff did contact M & T Bank, which told her that they were not reporting any delinquencies.

70. On or about August 6, 2013, Plaintiff again disputed to Freddie Mac any indication that she had been delinquent on her M & T account.

71. Freddie Mac again failed to determine that the indication of delinquencies was a result of the actions of Freddie Mac.

72. On or about August 9, 2013, Freddie Mac, through its telephone representative Terrance Stroman, told Plaintiff he was going to give Plaintiff what she needed to fight Equifax with what they were reporting, which was Plaintiff having 90 days late on her mortgage.

73. Equifax was not reporting Plaintiff 90 days late on her mortgage.

74. In August of 2013, Plaintiff was again unable to obtain a mortgage loan due to the "Caution" from Freddie Mac.

75. Freddie Mac's August 2013 Feedback Certificate also included a section of "Credit Information" and a subsection of "Credit Risk Comments." (Ex. A.)

76. Among the "Credit Risk Comments" was "Crdt rpt w/recent mtg delinq or review mtg credit history." (*Id.*)

77. One of the lenders to whom Plaintiff applied contacted Freddie Mac.

78. Freddie Mac told the lender that the reason Freddie Mac had indicated "Caution" was that Plaintiff had been 90 days late on her mortgage in the past 12 months.

79. Freddie Mac never explained to any loan originator to whom it reported "Caution" that the actual reason for the "Caution" was M & T's 2013 reporting of the 2008 bankruptcy.

80. Plaintiff applied to multiple different lenders in her attempts to get approved for a refinance.

81. Each of the multiple different lenders told Plaintiff that her credit was good enough, her income was good enough, and everything else that was needed for a refinance was good enough.

82. But each time a loan originator brought the potential loan to Freddie Mac for approval, the loan originator would not extend the loan, due to Freddie Mac's Feedback Certificate.

83. On or about August 14, 2013, Plaintiff yet again disputed to Freddie Mac any indication that she had been delinquent on her M & T account.

84. Freddie Mac yet again failed to determine that the indication of delinquencies was a result of the actions of Freddie Mac.

85. In September of 2013, Plaintiff was again unable to obtain a mortgage loan due to the "Caution" from Freddie Mac.

86. Freddie Mac's September 2013 Feedback Certificate also included a section of "Credit Information" and a subsection of "Credit Risk Comments."

87. Among the "Credit Risk Comments" was "Crdt rpt w/recent mtg delinq or review mtg credit history."

88. By September 6, 2013, Freddie Mac knew that Freddie Mac's indication of 90 days late within the past 12 months was based on Freddie Mac's own treatment of the March 2013 reporting of the bankruptcy, rather than on any reporting by Equifax of a mortgage delinquency.

89. Freddie Mac never took any steps to correct the false and misleading information.

90. On or about September 13, 2013, Freddie Mac, through its Senior Case Manager Troy Gilroy, falsely stated to Plaintiff that the problem was with Equifax and that Equifax needed to correct it.

91. In October of 2013, Plaintiff was again unable to obtain a mortgage loan due to the "Caution" from Freddie Mac.

92. Freddie Mac's October 2013 Feedback Certificate also included a section of "Credit Information" and a subsection of "Credit Risk Comments."

93. Among the "Credit Risk Comments" was "Crdt rpt w/recent mtg delinq or review mtg credit history."

94. Plaintiff spent many infuriating hours over multiple months trying to figure out why no lender would approve her and why Freddie Mac was saying "Caution."

95. Neither Equifax nor Freddie Mac would produce to Plaintiff copies of what Equifax had been reporting to Freddie Mac.

96. In an email to Plaintiff dated November 18, 2013, Freddie Mac, through its Senior Case Manager Troy Gilroy, stated that Freddie Mac was trying "to obtain a resolution regarding the issue with Equifax. We have confirmed that there have been no delinquent payments on your accounts and that the issue lies with the in-file reporting of Equifax. We have sent the requested info to Equifax."

97. The issue of the reporting of delinquent payments did not lie with Equifax.

98. Freddie Mac had not sent the requested information to Equifax.

99.  Freddie Mac representatives told Plaintiff that Freddie Mac had notified Equifax of the problem and that Equifax would not fix it.

100. From July 2013 to the present, Plaintiff disputed to Freddie Mac the inaccurate reporting of her M & T account multiple times, including without limitation the disputes specified herein.

101. Freddie Mac intended that Plaintiff would rely on its false representations that Equifax had been reporting delinquencies on the M & T account: Freddie Mac intended to deflect Plaintiff's efforts away from Freddie Mac and that Plaintiff would rely on Freddie Mac's representations to take her concerns up with Equifax and M & T instead.

102. In reliance on Freddie Mac's repeated false representations that Equifax had been reporting delinquencies on the M & T account, Plaintiff spent many infuriating hours making telephone calls and written correspondence to Equifax and M & T, in attempts to get Equifax and/or M & T to fix the alleged reporting of delinquencies.

103. In reliance on Freddie Mac's repeated false representations that Equifax had been reporting delinquencies on the M & T account, Plaintiff spent time, effort, and money lodging a complaint against Equifax with the Minnesota Attorney General.

104. In reliance on Freddie Mac's repeated false representations that Equifax had been reporting delinquencies on the M & T account, Plaintiff sued Equifax.

105. Plaintiff suffered substantial emotional distress from the ordeal she went through because of Freddie Mac's repeated false representations that Equifax had been reporting delinquencies on the M & T account.

106. Because of Freddie Mac's actions and omissions, Plaintiff has suffered actual damages, including without limitation credit denials, credit delays, credit on less favorable terms, out-of-pocket expenses, detriment to her credit rating, harm to her reputation, and emotional distress.

107. Plaintiff's emotional distress was so severe that she sought medical treatment for stress-induced stomach problems that she thought might be an ulcer.

108. At all times pertinent hereto, Freddie Mac was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Freddie Mac.

## **TRIAL BY JURY**

109. Plaintiff is entitled to and hereby requests a trial by jury.

# CAUSES OF ACTION

## COUNT I
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)

110. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

111. Defendant Freddie Mac willfully and/or negligently violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's consumer reports.

112. Because of Freddie Mac's violations of § 1681e(b), Plaintiff has suffered actual damages, including without limitation credit denials, credit delays, credit on less favorable terms, out-of-pocket expenses, detriment to her credit rating, harm to her reputation, and emotional distress.  Plaintiff is therefore entitled to recover actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o.

113. Freddie Mac's actions and omissions were willful, rendering it liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

114. Defendant Freddie Mac is liable for Plaintiff's costs and attorney's fees, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i

115. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

116. Defendant Freddie Mac willfully and/or negligently violated 15 U.S.C. § 1681i in multiple ways including without limitation by failing to conduct a reasonable reinvestigation of Plaintiff's dispute(s) and by failing thereafter to appropriately delete or modify information in Plaintiff's file.

117. Because of Freddie Mac's violations of § 1681i, Plaintiff has suffered actual damages, including without limitation credit denials, credit delays, credit on less favorable terms, out-of-pocket expenses, detriment to her credit rating, harm to her reputation, and emotional distress. Plaintiff is therefore entitled to recover actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o.

118. Freddie Mac's actions and omissions were willful, rendering it liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

119. Defendant Freddie Mac is liable for Plaintiff's costs and attorney's fees, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT III
## DEFAMATION

120. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

15

121. Defendant's foregoing actions and omissions constitute defamation.

122. Defendant's foregoing actions and omissions were intentional and malicious.

123. As a result of Defendant's intentional and malicious defamation, Plaintiff has suffered actual damages, including without limitation credit denials, credit delays, credit on less favorable terms, out-of-pocket expenses, detriment to her credit rating, harm to her reputation, and emotional distress.

## COUNT IV
## NEGLIGENCE

124. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

125. Defendants' foregoing actions and omissions constitute a breach of Defendant's duties to Plaintiff.

126. Defendant's foregoing actions and omissions were intentional and malicious.

127. As a result of Defendant's intentional and malicious negligence, Plaintiff has suffered actual damages, including without limitation credit denials, credit delays, credit on less favorable terms, out-of-pocket expenses, detriment to her credit rating, and harm to her reputation.

## COUNT V
## FRAUD

128. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

129. Defendant's foregoing actions, including without limitation the intentionally false representations to Plaintiff on July 26, August 9, September 13, and November 18, 2013, that Equifax had been reporting delinquencies on the M & T account, made with the intent that Plaintiff rely thereon, constituted fraud.

130. Defendant's foregoing actions and omissions were intentional and malicious.

131. As a result of Defendant's intentional and malicious fraud, Plaintiff has suffered actual damages, including without limitation credit denials, credit delays, credit on less favorable terms, out-of-pocket expenses, detriment to her credit rating, harm to her reputation, and emotional distress.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

132. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

133. Defendant's foregoing actions, including without limitation the false representations to Plaintiff on July 26, August 9, September 13, and November 18, 2013, that Equifax had been reporting delinquencies on the M & T account, made with the intent that Plaintiff rely thereon, constituted negligent misrepresentation.

134. Defendant's foregoing actions and omissions were intentional and malicious.

135. As a result of Defendant's intentional and malicious negligent misrepresentation, Plaintiff has suffered actual damages, including without limitation credit denials, credit delays, credit on less favorable terms, out-of-pocket expenses, detriment to her credit rating, and harm to her reputation.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

136. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

137. Defendant's foregoing actions and omissions constitute intentional infliction of emotional distress.

138. Defendant's foregoing actions and omissions were extreme and outrageous.

139. Defendant's foregoing actions were intentional and/or reckless.

140. As a result of Defendant's intentional and malicious defamation, Plaintiff has suffered actual damages, including severe emotional distress.

## WHEREFORE,

Plaintiff prays that judgment be entered against Defendant Freddie Mac for:

   a.) Plaintiff's actual damages;

   b.) Punitive and/or statutory damages pursuant to 15 U.S.C. § 1681n;

c.) Reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n and/or 1681o; and

d.) Such other and further relief as may be just and proper.

Dated:    9/11/15               **GOOLSBY LAW OFFICE, LLC**

By:    s/John H. Goolsby
John H. Goolsby, #0320201
475 Cleveland Ave. N, Suite 212
Saint Paul, MN 55104
Telephone: (651) 646-0153
jgoolsby@goolsbylawoffice.com
**Attorney for Plaintiff**